AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

**FILED**

AUG 2 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| T-Mobile | ) | |
| 4 Sylvan Way | ) | |
| Parsippany, New Jersey | ) | |

'19 MJ - 3642

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____New Jersey_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy |
| 42 USC 6928(d)(5) | Transportation of Hazardous Waste Without a Manifest |
| 42 USC 6928(d)(1) | Illegal Transportation of Hazardous Waste |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

EPA Special Agent Aaron Moore
*Printed name and title*

Sworn to before me and signed in my presence.

Date: AUG. 27, 2019

*Judge's signature*

City and state:  San Diego, California

Hon. Andrew G. Schopler, US Magistrate Judge
*Printed name and title*

ATTACHMENT A

T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 4 Sylvan Way, Parsippany, New Jersey 07504.

T-Mobile hosts the electronic communication accounts associated with the telephone numbers (619) 332-9780; (619) 431-7016; (619) 552-1024  that are the subject of this search warrant and search warrant application (the "subject accounts").

## ATTACHMENT B

**I.**   Service of Warrant

The officer executing the warrant shall permit the T-Mobile, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.**   Items to be Seized

Agents shall seize the following records, data, and information covering the following time periods:

>   (a) February 2, 2018 at 9:00 am to February 5, 2018 at 5:00 pm;
>
>   (b)  February 10, 2018 at 9:00 am to February 13, 2018 at 5:00 pm;
>
>   (c) April 28, 2018 at 9:00 am May 4, 2018 at 5:00 pm; and
>
>   (d) May 15, 2018 at 9:00 am to May 25, 2018 at 5:00 pm.

and maintained by T-Mobile. for the subject accounts identified in Attachment A:

a.   Subscriber information, including:
   i.   Names;
   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
   iii. Local and long distance telephone connection records;
   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
   v.   Length of service (including start date) and types of service utilized;
   vi.  Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

       Identity Identifiers ("IMSI"), or International Mobile Equipment
       Identities ("IMEI");

    vii.  Other subscriber numbers or identities; and

   viii.  Means and source of payment (including any credit card or bank
       account number) and billing records.

b.  Records and other information about past wire or electronic
    communications sent or received by the subject account, including:

     i.  the date and time of the communication;

    ii.  the method of the communication;

   iii.  the source and destination of the communication, such as the
      source and destination telephone numbers (call detail records),
      email addresses, or IP addresses; and

   iv.  Cell site locations and sectors for all outgoing and incoming
      voice, SMS, MMS, and Data communications; and

    v.  All available PCMD reports, to include "timing advance" data.

which are evidence of violations of 18 U.S.C. § 371 – Conspiracy; 42 U.S.C.
§ 6928 (d)(1) – Illegal Transportation of Hazardous Waste; 42 U.S.C. § 6928
(d)(5) – Transportation of Hazardous Waste Without a Manifest; 18 U.S.C. §
2 – Aiding and Abetting.

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT

I, AARON MOORE, being duly sworn, state as follows:

1.     This affidavit is in support of an application by the United States of America for a search warrant for T-Mobile, 4 Sylvan Way, Parsippany, New Jersey 07504, as described in Attachment A, to search the account associated with the following cellular telephone numbers (the International Mobile Equipment Identity or "IMEI" numbers are unknown):

(a) **Phone # 619-332-9780** (Subject Telephone number 2)

(b) **Phone #619-431-7016** (Subject Telephone number 3)

(c) **Phone #619-552-1024** (Subject Telephone number 4)

(the "subject accounts") for subscriber information, telephone toll data, and cell-site geolocation data for the following time periods:

(a) February 2, 2018 at 9:00 am to February 5, 2018 at 5:00 pm;

(b) February 10, 2018 at 9:00 am to February 13, 2018 at 5:00 pm;

(c) April 28, 2018 at 9:00 am to May 4, 2018 at 5:00 pm; and

(d) May 15, 2018 at 9:00 am to May 25, 2018 at 5:00 pm.

There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Section 371, Title 42, United States Code, Section 6928(d)(1), Title 42 United States Code, Section 6928(d)(5) and Title 18, United States Code, Section 2, as described in Attachment B.  This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services.  In this case, as will be shown below, T-Mobile provides electronic communication services in the form of cellular and wireless telephone service for the subject account.

//

//

EXPERIENCE & TRAINING

2.    I have been employed as a Special Agent with the U.S. Environmental Protection Agency (EPA), Criminal Investigation Division since April 2018.  Prior to joining EPA-CID, I was a Special Agent with the U.S. Department of Agriculture (USDA), Office of Inspector General (OIG), Office of Investigations since October 2003.  I have been employed as a Special Agent with EPA or USDA-OIG since 2003 and am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7).  I hold a Bachelor of Arts degree in Biology and a Master's degree in Public Administration.  I am a graduate of the Federal Law Enforcement Training Center's basic criminal investigation course at Glynco, Georgia, the academy for Special Agents assigned to the Inspector General, as well as EPA's Environmental Investigations Basic Training.  At EPA, I have conducted or participated in criminal investigations involving environmental laws, such as the Clean Water Act, the Clean Air Act and the Resource Conservation and Recovery Act (hazardous waste).  At OIG, I conducted or participated in many criminal investigations and executed numerous search warrants involving fraud perpetrated against USDA programs.    The crimes I have investigated with OIG include financial crimes, government benefit fraud, employee misconduct, grand theft, animal welfare offenses and fraud by computer access.  I have had formal training and experience in financial crime investigations.  In the course of my investigations, I have conducted financial fraud undercover operations, made arrests, and seized evidence of violations of law.  I have continued to receive training throughout my career.  I have operated undercover agents, arrested and interviewed subjects, conducted physical surveillances, and utilized electronic and video surveillance.

3.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events,

AFFIDAVIT IN SUPPORT OF APPLICATION                    -2-
FOR SEARCH WARRANT

details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

STATEMENT OF PROBABLE CAUSE

**Introduction**

4.     WellgreensCA Inc. ("Wellgreens") was incorporated in California on June 1, 2016 and occupies a location in an industrial park at 7542 Trade Street, Suite A, San Diego, California. The officers of Wellgreens are Sarmad ("Sam") Hallak (CEO), Lunar Loussia (Secretary) and Imad Samouna (CFO).

5.     Wellgreens is in the business of extracting oil from cannabis. Part of that process involves using ethanol as a solvent to strip the fats and oils from the plant material. The waste ethanol generated by this process is a federally regulated hazardous waste because it is highly flammable. A waste liquid having a flash point of less than 140 degrees Fahrenheit is generally considered to be a federally regulated hazardous waste having the characteristic of ignitability pursuant to 40 CFR § 261.21. The Wellgreens waste ethanol had a flash point of 70 degrees Fahrenheit, according to the testing data.

**Regulatory Background**

6.     Generators of potentially hazardous waste are required to perform a hazardous waste determination to determine if their waste is federally regulated. 40 CFR § 262.11. A generator is any person, by site, whose act or process produces hazardous waste. 40 CFR § 260.10. A generator may not treat, store, dispose of, transport or offer for transportation, hazardous waste without first having received an

identification number from the U.S. EPA.  40 CFR § 262.12. There is no charge for obtaining an EPA ID number.

7.     Wellgreens applied for an EPA ID number on June 2, 2018.   The application, identifying Wellgreens as a large quantity generator, was signed by Lunar Loussia, as president, owner, and co-founder of Wellgreens.   A temporary ID was provided shortly thereafter, and a permanent EPA ID was assigned on June 20, 2018.

8.     There is also a record of a temporary EPA ID number (intended for a single disposal, such as an accidental release, not for a company regularly generating hazardous waste) on March 30, 2018, which was inactivated after the permanent EPA ID number was issued.   The temporary EPA ID number was sought using the email address lunar@wellgreensca.com.

9.     The first hazardous waste manifest relating to waste ethanol generated at Wellgreens was a manifest for the pickup of six drums containing a total of 330 gallons on June 7, 2018.   There is no evidence in any U.S. or California EPA database that any of the EPA ID numbers assigned to Wellgreens were ever used to dispose of hazardous waste prior to June 7, 2018.   No lawful disposal can occur without the use of the EPA ID number.

10.     In order to lawfully transport and dispose of hazardous waste, a generator must prepare a hazardous waste manifest.  40 CFR § 262.20. The manifest provides a "cradle-to-grave" system of tracking hazardous waste in the United States. The manifest is a form in triplicate that identifies the nature and amount of the waste, the generator, the transporter and the disposal site. The EPA ID numbers of the generator, transporter and the disposal site must appear on the manifest. The form is signed by the generator, as well as the transporter who accepts the waste from the generator.   A copy is left with the generator as proof of proper transportation.   When the waste is taken to the disposal site, the manifest is signed by the recipient and a copy is given to the transporter as proof of delivery.   When the waste is incinerated by the disposal site, a copy of the

1   completed manifest is sent to both the generator and the State of California as proof of

2   lawful disposal.

3   **Disposal of Ethanol Drums**

4   11.   Wellgreens used ethanol in their production of cannabinoid oil.   .

5   Wellgreens began purchasing 55-gallon drums of ethanol on November 2, 2017, and

6   shipping records indicate that Wellgreens took delivery of approximately 55 drums of

7   ethanol between that date and May 25, 2018.  Employees estimated that one and a half

8   55-gallon drums of waste ethanol were generated each week.

9   12.   On May 25, 2018, the San Diego County Department of Environmental

10   Health Services (DEH) inspected the Wellgreens facility.  They located seven drums of

11   ethanol product and three drums of waste ethanol at the facility.  Based on the records

12   showing that 55 drums of ethanol had been delivered to Wellgreens prior to that date,

13   this meant that approximately 45 drums must have left the facility during this period,

14   transported without a manifest and delivered to an unknown location.

15   13.   During the course of my investigation, I identified five sites at which

16   drums of waste ethanol associated with Wellgreens were inappropriately dumped.  The

17   first instance was discovered on or about February 7, 2018, and involved three drums

18   of waste ethanol.  I was informed by a representative of the business that discovered the

19   drums that they believed the drums were dumped at the location at 1350 Hill Street in

20   El Cajon the previous weekend (February 2-5, 2018).  The second instance involved ten

21   drums of waste ethanol found dumped at the intersection of California State Routes 52

22   and 125, which was discovered on or about February 13, 2018.  The third instance

23   involved four drums of waste ethanol dumped at the same intersection, which was

24   discovered on or about May 1, 2018.  The fourth instance involved four drums dumped

25   at 171 Jamacha Road in El Cajon which was discovered on or about May 4, 2018.  The

26   final instance involved four drums dumped at 1201 Avocado Avenue in El Cajon, where

27

28

1  two drums were discovered on or about May 17, 2018 and two additional drums were
2  discovered on or about May 20, 2018.

3      14.    Based upon my experience and training, and conversations with other
4  environmental investigators and hazardous waste professionals, I know that the illegal
5  dumping of hazardous waste frequently occurs 48 hours or more prior to the time when
6  the dumping is discovered.  I know that persons engaged in the illegal dumping of
7  hazardous waste purposely choose to dump at a time and location where their crime is
8  unlikely to be immediately discovered.

9      15.    A distinct odor of marijuana was associated with the waste ethanol drums
10 located at all the locations.  Some of the drums bore unique writing in Sharpie on the
11 drums, including the words "Hazmat," "full" and various dates. Some of the writing
12 was found on strips of duct tape placed on the drums. Employees of Wellgreens
13 identified this writing, and the use of duct tape labels, as their method of distinguishing
14 the drums of waste ethanol ("hazmat") from the drums of new product at the facility.
15 The date of arrival was written on new drums, and the word "full" was written on the
16 hazmat drums when they were ready for disposal.  Photographs of the drums at all of
17 the various locations have been identified by Wellgreens' employees as drums used at
18 the facility.

19     16.    The disposal occurring at Avocado Avenue also included a disposal of
20 paperwork, which included test results, chain of custody documents, receipts and
21 packing slips and work schedules for Wellgreens employees.    The testing
22 documentation related to samples tested for cannabinoid profile, which identified the
23 client as "Refined Processes," the company hired by Wellgreens as a consultant to
24 provide expertise in processing the cannabinoid oil. Based on the paperwork found with
25 the barrels, a representative of the property management firm managing the Avocado
26 Avenue site contacted the testing laboratory which conducted the analysis in an effort
27 to identify the dumper of the drums on May 22, 2018.  The laboratory, in turn, contacted
28

AFFIDAVIT IN SUPPORT OF APPLICATION                    -6-
FOR SEARCH WARRANT

Refined Processes, and also forwarded the email they received to Nadia Malloian of Wellgreens on May 22, 2018.

17.     The San Diego County Department of Environmental Health Services, Hazardous Materials Management Division (DEH), returned to the Avocado Avenue site to remove the drums on May 25, 2018, but the drums were gone, removed by an unknown person.  These drums have never been located. However, the hazardous waste labels that DEH had applied to the drums upon discovery had been removed and left on the ground at the Avocado Avenue site.

18.     Aaron Thomas of Refined Processes advised me that on June 12, 2019, he had dinner with Sam Hallak and Lunar Loussia to discuss settlement of his claims against them. Thomas believed Wellgreens owed him approximately $1 million in unpaid commissions.  During the meeting, Thomas said he accused them of illegally dumping the ethanol and purposely leaving documents related to Refined Processes to place the blame on him.  According to Thomas, Hallak and Loussia apologized and stated that Richard LNU had "accidentally" grabbed the paperwork and ethanol barrels (which weigh approximately 450 pounds each) while he was cleaning the Wellgreens office.

19.     On June 27, 2019, a federal grand jury in San Diego returned an indictment against WellgreensCA, Inc., Lunar Loussia and Nadia Malloian, charging them with Conspiracy, in violation of Title 18, United States Code, Section 371; and five substantive counts each (relating to each dumping event) of Transportation without a Manifest, in violation of Title 42, United States Code, Section 6928(d)(5) and Illegal Transportation of Hazardous Waste, in violation of Title 42, United States Code, Section 6928(d)(1).

**Identification of Subject Telephone Numbers**

20.     On July 31, 2018, Aaron Thomas of Refined Processes provided me with a photograph of a balding man later identified as Richard Upchurch, standing with

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

1   another man by a battered white Ford pickup truck, which Thomas advised me were
2   taken from the security cameras at the rear of the Wellgreens facility. The date stamped
3   on the image was June 9, 2017. Although requests were made to Wellgreens, Thomas
4   and businesses near the dump sites, no other security footage was obtained during the
5   investigation.

6   21.   Wellgreens employees identified the balding man in the photograph
7   provided by Thomas as Richard, the man who disposed of trash, waste ethanol, and
8   green waste generated by Wellgreens, using the white pickup truck in the photograph.
9   A Wellgreens employee provided the telephone number of 619-381-3049 for Richard
10  as the number that was called to advise Richard that there was work for him at
11  Wellgreens (Subject Telephone number 1).

12  22.   The man named "Richard" in the photograph identified by the employees
13  of Wellgreens as the individual who picked up the drums of waste ethanol was
14  eventually identified as Richard Upchurch, based on the phone records for telephone
15  number 619-381-3049 (Subject Telephone number 1), which were provided by AT&T,
16  the carrier for Subject Telephone Number 1. Unfortunately, by the time he was
17  identified, he had had a stroke and ultimately passed away, so I was not able to interview
18  him. Upchurch's ex-wife told me the other man in the photograph was "Jimmy," a man
19  who assisted Upchurch in his handyman and hauling business. By the time I identified
20  "Jimmy" as Jimmy Browning, he was also deceased. Browning's telephone numbers
21  were identified as 619-332-9780 (Subject Telephone number 2) and 619-431-7016
22  (Subject Telephone number 3). A third individual, "Ricky," was also identified by a
23  Wellgreens' employee as assisting Upchurch. Ricky Smith was interviewed in a local
24  jail in June of 2019, and advised that his work with Upchurch involved only tree
25  trimming. Smith's telephone number was identified as 619-552-1024 (Subject
26  Telephone number 4).

27

28
AFFIDAVIT IN SUPPORT OF APPLICATION                    -8-
FOR SEARCH WARRANT

23.    On or about July 5, 2019, I spoke with Catherine Rodriguez, California Department of Justice Criminal Intelligence Specialist III, who works at the San Diego Law Enforcement Coordination Center.  Rodriguez's job involves performing phone record analysis for state, federal and local law enforcement agencies.  She has been trained to use Pen-Link and PLX (software used for communications data analysis). She was provided with call detail records for 619-381-3049 (Subject Telephone number 1).  She loaded the call detail records into Pen-Link and ran a target frequency report. She identified the users of the phone numbers in frequent contact with 619-381-3049 (Subject Telephone number 1) by querying law enforcement and public databases.  This process identified phone numbers used by the target's associates.  She identified 619-332-9780 (Subject Telephone number 2) and 619-431-7016 (Subject Telephone number 3) as belonging to Jimmy Browning and 619-552-1024 (Subject Telephone number 4) as belonging to Ricky Smith during the relevant times.  Rodriguez advised me that her research of government and open source databases revealed that T-Mobile was the carrier for Subject Telephone Numbers 2, 3 and 4.

24.    A separate warrant will be submitted to AT&T for the subscriber information, call records and cell site geo-location data for 619-381-3049 (Subject Telephone number 1).

25.    Richard Upchurch's phone records reveal approximately 250 calls between Upchurch and representatives of Wellgreens, including calls occurring on or about the dates of the dumpings of the drums of waste ethanol, as well as calls to Browning and Ricky Smith.  The records requested herein for Subject Telephones Numbers 2, 3 and 4 are sought in order to attempt to identify the location of Richard Upchurch and his assistants at or about the time of the dumpings.

**Electronic Communication Records**

26.    Based on my training and experience, and my consultation with other law enforcement officers, I am aware that T-Mobile routinely collects and stores data for

the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

27. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

28. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. T-Mobile has referred to the resulting location information as "timing advance" data.

29. This application requests such "timing advance" data (and other information) for the subject accounts for the following date and time ranges. During these time periods, the subscribers were believed to have been located in the vicinity with latitudinal and longitudinal coordinates:

(a) February 2, 2018 at 9:00 am to February 5, 2018 at 5:00 pm;

(i) Latitudinal: 32.785680

(ii) Longitudinal: -116.978130

(b) February 10, 2018 at 9:00 am to February 13, 2018 at 5:00 pm;

(i) Latitudinal: 32.836250

(ii) Longitudinal: -117.004854

(c) April 28, 2018 at 9:00 am to May 1, 2018 at 5:00 pm;

-10-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

(i) Latitudinal: 32.836250

(ii) Longitudinal: -117.004854

(d) May 1, 2018 at 5 pm to May 4, 2018 at 5:00 pm; and

(i) Latitudinal: 32.795502

(ii) Longitudinal: -116.935661

(e) May 15, 2018 at 9:00 am to May 25, 2018 at 5:00 pm.

(i) Latitudinal: 32.778900

(ii) Longitudinal: -116.956490

30.     Given these facts, I seek a warrant to search the subject accounts for the records and information in Attachment B.

<u>PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE</u>

31.     The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.


Aaron Moore
Special Agent
U.S. EPA-CID

Subscribed and sworn to before me this 27th day of August, 2019.


HON. ANDREW G. SCHOPLER
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-11-